# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-03-00524-CV

**Louis Pearson and Deborah Pearson, Appellants**

**v.**

**Patricia Fullingim d/b/a Awesome Air & Heat Service, Appellee**

**FROM THE COUNTY COURT AT LAW NO. 1 OF TRAVIS COUNTY
NO. 264,852, HONORABLE J. DAVID PHILLIPS, JUDGE PRESIDING**

## M E M O R A N D U M   O P I N I O N

Appellant Louis Pearson appeals the trial court's default judgment in favor of appellee Fullingim, d/b/a Awesome Air & Heat Service ("Awesome Air"), arguing that (1) the trial court erred by denying his motion for new trial when he did not receive notice of the trial, (2) the petition does not support a default judgment, and (3) the evidence is factually insufficient.[1]  We will affirm the judgment.

## BACKGROUND

In December 2001, Louis and Deborah Pearson signed a contract related to the purchase and installation of an HVAC system in their home by Awesome Air.  The Pearsons later

---

[1]  Although Deborah Pearson is listed as a party on the notice of appeal, her motion for new trial was granted, and the trial court later signed a requested order of nonsuit.  Because there is no controversy between Mrs. Pearson and Awesome Air, she lacks standing to pursue this appeal.  *See Austin Nursing Ctr., Inc. v. Lovato*, 171 S.W.3d 845, 849 (Tex. 2005).  Mrs. Pearson's lawsuit is therefore dismissed for want of jurisdiction.  *See id*.

decided not to use Awesome Air's services or products. On August 8, 2002, Awesome Air filed suit against the Pearsons for breach of contract. The Pearsons were each served with citation and answered separately,[2] asserting that the signed document was an estimate rather than a contract, and that they had been told they only needed to sign it for insurance purposes. The handwritten answers were file-stamped September 20 and October 11, respectively. Awesome Air filed a notice of hearing on October 30, setting trial for December 19. After the Pearsons failed to appear at trial, the trial court heard evidence and signed a default judgment in favor of Awesome Air for $3,101.39 in damages, $310.14 in pre-judgment interest, $245 in costs of court, $2,330 in attorney fees, and additional attorney's fees in the event of an appeal. The Pearsons filed a motion for new trial on February 21, 2003, alleging that they did not receive notice of the trial setting and were unaware that the trial had occurred or that a judgment had been signed until a writ of execution was attempted at Mrs. Pearson's place of business on February 5.[3] A hearing on the motion for new trial was held on March 24.[4] The trial court denied Mr. Pearson's motion, but granted Mrs. Pearson's. Awesome Air subsequently dismissed its suit against Mrs. Pearson. This appeal followed.

---

[2] The Pearsons were in the middle of divorce proceedings.

[3] Each attached an affidavit describing their lack of notice of the judgment and subsequent discovery that a trial had occurred.

[4] At the hearing, the trial court noted that the motion for new trial was not filed within thirty days of the date of judgment. *See* Tex. R. Civ. P. 329b. However, the docket sheet did not reflect that notice of the judgment was ever sent to the Pearsons. After hearing testimony and considering evidence from the Pearsons, the court determined that notice of the judgment was received on February 5; thus, it had jurisdiction to consider the motion for new trial filed on February 21. *See John v. Marshall Health Servs.*, 58 S.W.3d 738, 741 (Tex. 2001). Awesome Air did not produce evidence to controvert the Pearsons's claim, and neither party asserts that the trial court lacked jurisdiction.

**DISCUSSION**

In three issues, Mr. Pearson argues that the default judgment should be reversed because (1) he did not receive notice of the trial setting, (2) the petition does not support the judgment, and (3) the evidence is factually insufficient to support the award.

**Notice of trial**

A post-answer default may be set aside only if a defendant proves three elements: (1) his nonappearance was not intentional or the result of conscious indifference; (2) a meritorious defense; and (3) a new trial would cause neither delay nor undue prejudice.[5] *Mathis v. Lockwood*, 166 S.W.3d 743, 744 (Tex. 2005); *Cliff v. Huggins*, 724 S.W.2d 778, 779 (Tex. 1987) (citing *Craddock v. Sunshine Bus Lines*, 133 S.W.2d 124, 126 (Tex. 1939)). Although a "slight excuse" will often suffice to set aside a default judgment, the defaulting party must provide some excuse for failing to timely appear. *Comanche Nation v. Fox*, 128 S.W.3d 745, 750 (Tex. App.—Austin 2004, no pet.). When applying the *Craddock* test, the trial court looks to the knowledge and acts of the defendant as contained in the record before the court. *Holt Atherton Indus., Inc. v. Heine*, 835 S.W.2d 80, 82 (Tex. 1992). If all three elements of the *Craddock* test are met, the trial court abuses its discretion by not granting a new trial. *Bank One, Tex., N.A. v. Moody*, 830 S.W.2d 81, 85 (Tex. 1992).

---

[5] When the first element is established by proof that the defaulted party was not given notice of a trial setting, however, we will dispense with the second element for constitutional reasons. *Mathis v. Lockwood*, 166 S.W.3d 743, 744 (Tex. 2005).

The parties only dispute whether Mr. Pearson met the first element of the *Craddock* test—that his nonappearance was neither intentional nor the result of conscious indifference. *See Lockwood*, 166 S.W.3d at 744. In his affidavit attached to his motion for new trial, Mr. Pearson avers that after he filed a *pro se* answer on August 9, 2002, he was told to wait for notice of the trial setting. He states that he received no further information and no notice of a trial or a judgment until a deputy constable appeared at Mrs. Pearson's place of business with a writ of execution. Awesome Air argues that they sent notice of trial with other documents via certified mail, which Mr. Pearson signed for on October 26.[6]

At the hearing on the motion for new trial, Mr. Pearson admitted to receiving mail from Awesome Air's attorney but testified that, after opening it, "I thought I saw just a bunch of questions that I really didn't even know answers to half of them, so I just put it aside. Because I figured, why do I have to answer all these questions? I mean, if we're going to trial, I'll just answer them in the trial." He further explained that he looked through the documents until he "realized there were so many things there that didn't seem to make any sense to me that I just put it aside." Although he later testified that he did not receive the notice of hearing because "it looks a lot different than all those questions you have there," he also admitted that he did not know if he "read every word, because it was just much too technical" for him. Awesome Air's attorney then testified

---

[6] Certified mail that was sent separately to Mrs. Pearson on the same date was returned "unclaimed."

without objection that he sent requests for discovery, along with a notice of trial, to Mr. Pearson via certified mail for which Mr. Pearson signed a return receipt.[7]

We hold that under the evidence presented, Mr. Pearson has failed to show that his nonappearance was neither intentional nor the result of conscious indifference. Mr. Pearson testified that he received documents in the mail from Awesome Air's attorney, yet decided not to read it because he did not understand it. Awesome Air's attorney testified that the notice of hearing was included in the mailing that Mr. Pearson admits receiving and not reading. Although Mr. Pearson did not have an attorney, he is not excused from failing to read documents related to litigation of which he was admittedly aware. *See Stoner v. Thompson*, 578 S.W.2d 679, 684 (Tex. 1979) (*pro se* party charged with notice of all pleadings served on him); *see also Lockwood*, 166 S.W.3d at 745. The trial court did not abuse its discretion in denying the motion for new trial. We overrule Mr. Pearson's first issue.

**Whether the petition supports the default judgment**

In his second issue, Mr. Pearson argues that the default judgment should be reversed because Awesome Air's petition affirmatively discloses the invalidity of its breach of contract claim. *See Paramount Pipe & Supply Co. v. Muhr*, 749 S.W.2d 491, 494 (Tex. 1988) (citing *Thompson*, 578 S.W.2d at 684-85) (default judgment is erroneous if petition does not attempt to state cause of action within jurisdiction of court, give fair notice of claim asserted, or if petition affirmatively discloses

---

[7] The signed return receipt was admitted into evidence. Furthermore, Awesome Air's attorney had previously represented to the court at the default judgment hearing on December 19, 2002, that he had sent notice of the hearing as well as some discovery to the Pearsons via certified mail on October 25.

invalidity of claim). Mr. Pearson alleges that on its face, the document is not a contract but is a quote or estimate; that the contract fails for lack of an offer, acceptance, and consideration; and that a condition precedent was not performed.

### *Whether the document was a contract or an estimate*

The elements of an enforceable contract are (1) an offer, (2) acceptance in compliance with the terms of the offer, (3) a meeting of the minds, (4) each party's consent to the terms, (5) consideration, and in the case of written contracts, (6) execution and delivery of the contract with the intent that it be mutual and binding. *Advantage Physical Therapy, Inc. v. Cruse*, 165 S.W.3d 21, 24 (Tex. App.—Houston [14th Dist.] 2005, no pet.); *see Angelou v. African Overseas Union*, 33 S.W.3d 269, 278 (Tex. App.—Houston [14th Dist.] 2000, no pet.); *see also Excess Underwriters at Lloyd's, London v. Frank's Casing Crew & Rental Tools, Inc.*, No. 02-0730, 2005 Tex. LEXIS 418, at *47 (Tex. May 27, 2005) (Wainwright, J., concurring) (contract established when proven by preponderance of evidence that offer is accepted, accompanied by consideration); *Texas Gas Util. Co. v. Barrett*, 460 S.W.2d 409, 412-13 (Tex. 1970) (binding and enforceable contract where the writing embodied exchange of obligations of value to each contracting party, reciprocally or mutually induced). Whether the parties reached an agreement is a question of fact. *Scott v. Ingle Bros. Pacific, Inc.*, 489 S.W.2d 554, 556 (Tex. 1972); *Cruse*, 165 S.W.3d at 24. However, whether a contract is enforceable is a question of law. *Cruse*, 165 S.W.3d at 24; *Farah v. Mafrige & Kormanik, P.C.*, 927 S.W.2d 663, 678 (Tex. App.—Houston [1st Dist.] 1996, no writ); *see also Bruni v. Bruni*, 924 S.W.2d 366, 368 (Tex. 1996) (holding contract enforceable as matter of law).

6

The document signed by the Pearsons was introduced into evidence at the default judgment hearing. It is a four-page document; the first three pages are in the format of a form which was filled out by Awesome Air's technician, then signed at the bottom of each of the first three pages by the technician, Fullingim, and the Pearsons. Mr. Pearson argues that the writing clearly denotes that it is an estimate or quote because the second page includes language such as "[s]ee following attached for H.V.A.C. (Price/Quote) change out, electrical wiring (Bid/Estimate) changeout." Furthermore, the top of the third page is entitled "H.V.A.C. Price/Quote" and later on the third page, the parties contemplate that the Pearsons would pay a "required deposit" of $4,260.36 with a balance due of $2,451.41 upon completion of the project. However, Awesome Air responds that Mr. Pearson is only partially correct—the document was in fact an estimate or quote—until the pages were signed by the Pearsons and Awesome Air representatives. Awesome Air asserts that after all parties signed the document, it became a binding contract.

The fourth page of the document, which is wholly typed, is entitled "Contract for Services." It recites that

> **This is a contract** by and between Awesome Air & Heat Service and 'customer,' whose signature appears on the front. The terms of the contract will be written in and, **if acceptable to both parties, signed by each**. The work to be done and/or parts & equipment to be installed or replaced and the fee to be paid by customer will be written in. The remaining terms of this contract are set forth herein.
>
> **Customer agrees to pay the fees stated in the contract**. . . . **Customer understands and agrees that his breach of this contract can, if enforcement in a court of law becomes necessary, become liable for court costs, attorney fees, and interest at a rate of 10% per year, in addition to the amounts due under this contract**. . . .

Customer agrees to make a cash deposit in the indicated amount before any duty to perform by Awesome Air shall arise. The deposit is non-refundable.

**Customer states, by his signature on front**, that there are no other oral agreements that have been made that are not reflected in the terms of this written contract . . . .

(Emphasis added.)

Mark Norton, a licensed master mechanical contractor for Awesome Air, testified that the contract was an "exact duplicate" of the document that was signed by himself, Fullingim, and the Pearsons.[8] He stated that the "contract was for the installation of a new heating and ventilation air-condition system in [the Pearsons's] home" and that it was a "standard form contract." However, he explained, the Pearsons breached the agreement. Awesome Air negotiated with the Pearsons's insurance company and performed work, which included design of the system as well as meeting the electricians and engineers at the home. Norton testified that he also purchased the equipment and priced anticipated expenses. Yet when Awesome Air was ready to install the system, the Pearsons had another company perform the work.[9]

There is no dispute that Awesome Air made an offer to install a new heating and ventilation air-condition system in the Pearsons's home. The document, while identifying itself as a contract, states that if its terms were acceptable to both parties, such acceptance would be denoted by signature. There is also no dispute that the document was signed by the parties. Thus, based on

---

[8] Although Mr. Pearson argues that the petition does not "establish privity" of the contract, he does not brief or explain his argument, nor does he dispute that he signed the document. Clearly, Mr. Pearson was a party to the contract.

[9] Because Awesome Air was able to return the equipment, the damages sought and awarded were based on lost profits.

the document and evidence introduced at the default hearing, the record demonstrates that there was an offer and acceptance with consent to the terms by the parties. Consideration of money in exchange for performance was also listed in the contract. Furthermore, lack of consideration is an affirmative defense, *see* Tex. R. Civ. P. 94, which was neither pleaded nor proved by Mr. Pearson.

Essentially, Mr. Pearson asserts that there was no meeting of the minds or consent to the terms of the contract. However, whether the parties reached an agreement is a question of fact, *see Scott*, 489 S.W.2d at 556. Because this is a default judgment, our review is limited to whether the petition affirmatively discloses the invalidity of its breach of contract claim. *Muhr*, 749 S.W.2d at 494. The petition and contract in this case do not negate a determination that the parties reached a meeting of the minds based on the signed document introduced in this case. We find sufficient evidence that the document constituted a contract that could support a judgment for breach of contract.[10]

### Existence of a condition precedent

A condition precedent is an event that must happen or be performed before there may be a breach of a contractual duty. *See Centex Corp. v. Dalton*, 840 S.W.2d 952, 956 (Tex. 1992) (citing *Hohenberg Bros. v. George E. Gibbons & Co.*, 537 S.W.2d 1, 3 (Tex. 1976)); *Beard Family*

---

[10] Furthermore, absent fraud, misrepresentation, or deceit, a party is bound by the terms of the contract he signed, regardless of whether he read it or thought it had different terms. *In re McKinney*, 167 S.W.3d 833, 835 (Tex. 2005) (citing *EZ Pawn Corp. v. Mancias*, 934 S.W.2d 87, 90 (Tex. 1996) and *N&D Fashions, Inc. v. DHJ Indus., Inc.*, 548 F.2d 722, 727 (8th Cir. 1976)). Although Mr. Pearson alleged in his answer that Awesome Air deceived him, because he did not appear at the trial, the record does not contain any evidence to support his claim.

*P'ship v. Commercial Indem. Ins. Co.*, 116 S.W.3d 839, 844 (Tex. App.—Austin 2003, no pet.). It may be either a condition to the formation of a contract or to an obligation to perform an existing agreement. *Dillon v. Lintz*, 582 S.W.2d 394, 395 (Tex. 1979); *see Wilson & Wilson Tax Servs. v. Mohammed*, 131 S.W.3d 231, 238 (Tex. App.—Houston [14th Dist.] 2004, no pet.).

A party seeking to recover under a contract bears the burden of proving that all conditions precedent have been satisfied. *Associated Indem. Corp. v. CAT Contr., Inc.*, 964 S.W.2d 276, 283 (Tex. 1998); *see Grimm v. Grimm*, 864 S.W.2d 160, 161-62 (Tex. App.—Houston [14th Dist.] 1993, no writ). However, once a party has pled that all conditions precedent have been performed, it is only required to offer proof of performance for the conditions precedent which have been specifically denied. *See* Tex. R. Civ. P. 54. Awesome Air's petition alleges that the Pearsons breached the contract by failing to use Awesome Air's services for the purchase and installation of an HVAC system, thereby depriving it of profits. Its petition does not allege, however, that all conditions precedent have been performed. Therefore, in order to prevail on its breach of contract claim, Awesome Air must prove that all conditions precedent were actually satisfied. *See CAT Contr., Inc.*, 964 S.W.2d at 283; *see also* Tex. R. Civ. P. 54.

The contract provides that "Customer agrees to make a cash deposit in the indicated amount before any duty to perform by Awesome Air shall arise." Awesome Air contends that the clause is only a condition precedent to *its* duty to perform, and that Mr. Pearson made a binding promise to pay a deposit. We agree.

The contract recites that Mr. Pearson unconditionally agreed to pay the fees stated in the contract. He also agreed to make a cash deposit—but the clause in dispute was likely inserted

to protect Awesome Air for being sued for non-performance in the event a deposit was never paid. There is no evidence that conditions precedent were not performed.

For the foregoing reasons, we hold that the petition does not affirmatively disclose the invalidity of Awesome Air's claim. We overrule Mr. Pearson's second issue.

**Factual sufficiency of the evidence**

In a nonjury trial, where no findings of fact or conclusions of law are filed or requested, it will be implied that the trial court made all the necessary findings to support its judgment. *Holt Atherton Indus., Inc. v. Heine*, 835 S.W.2d 80, 83-84 (Tex. 1992) (citing *Burnett v. Motyka*, 610 S.W.2d 735, 736 (Tex. 1980)). When a statement of facts is presented, these implied findings may be challenged by factual or legal sufficiency points. *Heine*, 835 S.W.2d at 83-84 (citing *Roberson v. Robinson*, 768 S.W.2d 280, 281 (Tex. 1989)). When conducting a factual sufficiency review, we examine the entire record and set aside the verdict only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and manifestly unjust. *See Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986).

Mr. Pearson asserts that the evidence is factually insufficient to support the judgment because there was "no contract here, no performance, substantial performance, or partial performance, no consideration, and therefore no damages or cause of action, and insufficient evidence to support either. Furthermore, the aforementioned analysis for the petition not supporting the post-answer default overlaps and applies equally to the factual insufficiency of the evidence claim." He does not otherwise explain or brief these claims. We have reviewed the record and find

11

that the verdict is not so contrary to the overwhelming weight of the evidence as to be clearly wrong and manifestly unjust. *See id*. We overrule Mr. Pearson's third issue.

## CONCLUSION

The trial court did not abuse its discretion by denying Mr. Pearson's motion for new trial. Furthermore, the evidence in the record supports the judgment for breach of contract. We affirm the judgment of the trial court.

_____

W. Kenneth Law, Chief Justice

Before Chief Justice Law, Justices Patterson and Puryear

Affirmed

Filed: February 17, 2006