# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-12-00145-CV

**Houston Independent School District and Michael Williams,
Successor to Robert Scott, Commissioner of Education, Appellants**

**v.**

**Reginald Simpson, Appellee**

**FROM THE DISTRICT COURT OF TRAVIS COUNTY, 353RD JUDICIAL DISTRICT
NO. D-1-GN-11-001924, HONORABLE TIM SULAK, JUDGE PRESIDING**

## M E M O R A N D U M   O P I N I O N

This administrative appeal arises from a dispute between appellee Reginald Simpson and his former employer, the Houston Independent School District (the District), in which Simpson contends that the District improperly denied his employment contract. After pursuing relief through the District's grievance process, Simpson sought administrative review of the District's decision before the Texas Commissioner of Education. *See* Tex. Educ. Code § 7.057(a) (providing for appeal of certain actions or decisions of any school district board of trustees). The Commissioner determined that there was no written employment contract between Simpson and the District and consequently dismissed Simpson's appeal for lack of jurisdiction. Simpson then brought suit in district court for judicial review of the Commissioner's decision. *See id*. § 7.057(d) (providing for appeal of decisions of Commissioner in district court). The district court reversed the Commissioner's jurisdictional ruling and remanded the cause to the Commissioner for further proceedings. On appeal,

the District and the Commissioner assert that the trial court improperly reversed the Commissioner's decision.[1]  We will affirm the district court's judgment.

## BACKGROUND

Most of the background facts relevant to the issues in this appeal are undisputed. Simpson was employed by the District as a certified educator from 1999 to May 2007, when he voluntarily resigned to pursue other career opportunities.[2]  In August 2007, Simpson reapplied for employment with the District.  As part of the application process, the District gave Simpson the following document:

TO:   HISD Employment Applicant

FROM:  Beatrice G. Garza, Executive General Manager, Human Resources

RE:   Memorandum of Understanding Regarding Employment on a Contingency Basis

This letter is to inform all [District] applicants that [the District] is offering you employment at this time contingent upon satisfactory results of the required local criminal background check.  However, if the result of the state and national search are [sic] unacceptable, your employment may be terminated.

Your signature on this Memorandum of Understanding constitutes your agreement that you understand the conditional nature of your employment, and that your failure to fully disclose all criminal history records may terminate your employment with the district.

---

[1]  While the Commissioner and the District each filed a notice of appeal and brief on the same issues, we will refer to the appellants collectively as "the District."

[2]  According to Simpson, at the time he resigned, he was reassured by both his principal and a representative from the District's human resources office that he would be eligible for rehire.

Both Simpson and an official from the District signed the document. A week later, a human resources employee with the District gave Simpson an electronically pre-signed One-Year Employee Probationary Contract (Employee Contract), which Simpson signed and returned the same day. However, according to the District, Simpson had been issued the Employee Contract in error, and the District informed Simpson of this error the next day. The District also later told Simpson that "his criminal record precludes employment with the [District]."[3]

Simpson subsequently filed a grievance with the District's administration, alleging that his contract had been improperly denied and requesting a formal hearing. At the conclusion of the District's grievance process, including several evidentiary hearings, the District Board of Education (the Board) denied Simpson's grievance.[4] Simpson appealed the District's decision to the Commissioner pursuant to section 7.057(a)(2)(B) of the Texas Education Code.

In his petition to the Commissioner, Simpson recited the facts above and asserted that the District's "effort to invalidate [his] fully executed 2007-08 probationary teacher contract constitutes a breach of [his] contract, which causes him financial harm." Simpson's appeal was

[3] Prior to his employment with the District in 1999, Simpson disclosed that he had received deferred adjudication for felony theft in 1985. According to the District, under its then-existing policy, it granted Simpson a waiver that allowed him to be employed up until his resignation in 2007, despite this criminal history.

[4] The District has a three-tiered complaint system. At the final stage, the "level III grievance" decision is made by the Board. In this case, following the presentation of Simpson's grievance, and the arguments of the parties, the Board deferred to the District Superintendent to make the final decision on Simpson's grievance. On October 22, 2008, the Superintendent notified Simpson by letter that "based on the arguments presented to the board, the unique circumstances in this case, and the board's authorization to disregard the twenty-plus year old felony conviction, I have decided to grant Mr. Simpson eligibility for rehire in the [District]." However, the Superintendent also notified Simpson that his request for "back pay and all other relief" was denied.

assigned to an administrative law judge (ALJ). After "considering the record and matters officially noticed," the ALJ issued a proposal for decision, concluding that the Commissioner lacked jurisdiction over the cause under section 7.057(a)(2)(B).

Upon considering the local record (developed through the District's grievance process) and the ALJ's proposal for decision, the Commissioner determined that (1) Simpson's employment contract was contingent on a satisfactory background check, (2) this requirement served as a condition precedent, and (3) because that condition was not met, the parties had not entered into a contract for employment for the 2007-2008 school year. Similarly, the Commissioner determined that (1) "the belief of both parties that [Simpson's] criminal history had been inspected, approved, and would not prohibit his employment was a mutual mistake," (2) "because [the District] promptly informed [Simpson] of the error and did not indicate an intention to affirm the contract, [the District] did not lose its ability to avoid the contract for mutual mistake," and (3) "due to mutual mistake, the parties did not enter into a contract for employment for the 2007-2008 school year." Concluding that the parties had not entered into a "written employment contract," the Commissioner determined that Simpson's grievance did not satisfy the jurisdictional requirements of section 7.057 of the Education Code. As a result, the Commissioner dismissed the cause for lack of jurisdiction.

Simpson filed suit in Travis County district court. After admitting the administrative record, the district court concluded that "[t]he Commissioner erred as a matter of law in holding that he did not have jurisdiction to hear [Simpson's] appeal." The district court remanded the case to the Commissioner for further action.

4

## STANDARD OF REVIEW

In deciding cases under his jurisdiction, the Commissioner is required to "issue a decision based on a review of the record developed at the district level under a substantial evidence standard of review." Tex. Educ. Code § 7.057(c). Similarly, on appeal, we review the judgment of the district court regarding the factual determinations of the Commissioner under a substantial-evidence standard. *Tijerina v. Alanis*, 80 S.W.3d 292, 295 (Tex. App.—Austin 2002, pet. denied).[5] Under this standard, the findings, inferences, conclusions, and decisions of the Commissioner are presumed to be supported by substantial evidence, and the burden is on the contestant to prove otherwise. *See id.* at 295 n.5. We determine whether the evidence as a whole is such that reasonable minds could have reached the same conclusion as the Commissioner in the disputed action. *See id.* On the other hand, the Commissioner's resolution of legal questions, unlike factual determinations, are not entitled to a presumption of validity and are reviewed de novo. *Weslaco Fed'n of Teachers v. Texas Educ. Agency*, 27 S.W.3d 258, 263-64 (Tex. App.—Austin 2000, no pet.).

In this case, the Commissioner determined that the dispute between the District and Simpson fell outside of his subject-matter jurisdiction. When reviewing the Commissioner's decision with respect to jurisdiction, we employ the same standard of review used when reviewing a trial court's order dismissing a cause for want of jurisdiction. *Tijerina*, 80 S.W.3d at 295. Where, as

---

[5] Because whether the Commissioner's order satisfies the substantial-evidence standard is a question of law, the district court's judgment is not entitled to deference on appeal. *Heritage on the San Gabriel Homeowners Ass'n v. Texas Comm'n on Envtl. Quality*, 393 S.W.3d 417, 424 (Tex. App.—Austin 2012, pet. denied)*; see Texas Dep't of Pub. Safety v. Alford*, 209 S.W.3d 101, 103 (Tex. 2006) (per curiam). On appeal from the district court's judgment, the focus of the appellate review, as in the district court, is on the agency's decision. *Heritage*, 393 S.W.3d at 424.

here, the Commissioner makes fact findings necessary to resolve the jurisdictional issue based on an evidentiary record developed through an adjudicative process, we review those fact findings under the substantial-evidence standard. *See id.* (noting that "substantial-evidence review may be appropriate when examining the Commissioner's decisions based on evidence relevant to jurisdiction"). To the extent the jurisdictional inquiry turns on an interpretation of the Education Code, we will defer to the Commissioner's interpretation of that statute, to the extent it is ambiguous, if the interpretation is reasonable and does not contradict the plain language of the statute. *Tijerina*, 80 S.W.3d at 295; *see also Combs v Health Care Servs. Corp.*, 401 S.W.3d 623, 630 (Tex. 2013) (explaining that ambiguity is "a precondition to agency deference").

## ANALYSIS

Section 7.057 of the Education Code governs appeals from a local school district to the Commissioner. Subsection (a) defines the Commissioner's jurisdiction and provides:

> (a) [A] person may appeal in writing to the Commissioner if the person is aggrieved by:
>
> (1) the school laws of this state; or
>
> (2) actions or decisions of any school district board of trustees that violate:
>
> (A) the school laws of this state; or
>
> (B) a provision of a *written employment contract* between the school district and a school district employee, if a violation causes or would cause monetary harm to the employee.

6

Tex. Educ. Code § 7.057(a) (emphasis added). Under this standard, the Commissioner examines the record developed below to determine whether the District's decision resulted from a prejudicial error of law, such as an abuse of discretion, an action taken in excess of authority, a violation of law, or fact findings that are unreasonable in light of the evidence found in the record of proceedings before the school board. *Ysleta Indep. Sch. Dist. v. Meno*, 933 S.W.2d 748, 751 n.5 (Tex. App.—Austin 1996, writ denied).

Here, in both proceedings, the Commissioner and the district court interpreted the Employee Contract and determined whether, as a threshold matter, the dispute fell within the Commission's jurisdiction under section 7.057(a)(2)(B). In determining that it did not, the Commissioner reasoned that (1) the existence of a valid "written employment contract" between the parties was a fact, the existence of which was necessary to confer jurisdiction under section 7.057(a)(2)(B), and (2) no such contract existed in this case because (a) "no contract was formed because a condition precedent was never met," and (b) alternatively, "a mutual mistake of fact by the parties shows that there was no meeting of the minds." Thus, the Commissioner necessarily interpreted the term "written employment contract" in section 7.057(a)(2)(B) to require the formation of a valid written contract. On appeal, the parties do not dispute whether the Commissioner's interpretation of section 7.057(a) is correct.[6] Assuming without deciding that the Commissioner's interpretation is correct, the resolution of this appeal turns on whether there was a "written

---

[6] "While the Commissioner's interpretation of his jurisdiction under section 7.057(a) is not controlling, it does merit serious consideration if it is reasonable and does not contradict the plain language of the statute." *Smith v. Nelson*, 53 S.W.3d 792, 795 (Tex. App.—Austin 2001, pet. denied) (citing *Dodd v. Meno*, 870 S.W.2d 4, 7 (Tex. 1994)).

employment contract" formed between Simpson and the District under section 7.057(a)(2)(B), as interpreted by the Commissioner.[7]

Under Texas law, to establish contract formation a party must prove, among other elements, an offer and acceptance and a meeting of the minds on all essential terms. *Principal Life Ins. Co. v. Revalen Dev., LLC*, 358 S.W.3d 451, 454-55 (Tex. App.—Dallas 2012, pet. denied). To create an enforceable contract, the minds of the parties must meet with respect to the subject matter of the agreement and all its essential terms. *Id.* In three issues on appeal, the District argues that the Commissioner correctly concluded that no written employment contract was formed between the parties and consequently that he had no jurisdiction. First, the District contends that the Commissioner correctly determined that obtaining satisfactory results from Simpson's background check served as an unfulfilled condition precedent to the formation of an employment contract between the District and Simpson. Second, the District contends that the record contains substantial evidence of mutual mistake. Finally, the District argues that the record contains substantial evidence that the District's criminal-history policy restriction was not waived.

**Condition Precedent**

Turning to the District's first issue on appeal, we consider whether the district court erred in failing to affirm the Commissioner's ruling on the ground that Simpson's satisfactory criminal background check served as an unfulfilled condition precedent to the formation of a

---

[7] Simpson does not allege that any action or decision by the Board of Trustees violated the school laws of this state. *See* Tex. Educ. Code § 7.057(a)(2)(A). There is no dispute that, if the Commissioner has jurisdiction over Simpson's grievance, it would be pursuant to section 7.057(a)(2)(B).

contract between the parties. A condition precedent is an event that must happen or be performed before a duty of immediate performance of a promise arises. *Hohenberg Bros. Co. v. George E. Gibbons & Co.*, 537 S.W.2d 1, 3 (Tex. 1976). There are two types of conditions precedent. *See Dillon v. Lintz*, 582 S.W.2d 394, 395 (Tex. 1979) ("A condition precedent may be either a condition to the formation of a contract or to an obligation to perform an existing agreement. Conditions may, therefore, relate either to the formation of contracts or to liability under them."); *Pearson v. Fullingim*, No. 03-03-00524-CV, 2006 Tex. App. LEXIS 1346, at *15 (Tex. App.—Austin Feb. 17, 2006, no pet.) (mem. op.). The first type is a condition precedent to the formation of a contract. *See Lintz*, 582 S.W.2d at 395. If the parties have agreed that a contract will not be effective or binding until certain conditions occur, no binding contract will arise until the conditions specified have occurred. *Parkview Gen. Hosp. v. Eppes*, 447 S.W.2d 487, 490-91 (Tex. Civ. App.—Corpus Christi 1969, writ ref'd n.r.e.). The second type of condition precedent is a condition to an obligation to perform an existing agreement. *See Lintz*, 582 S.W.2d at 395. Conditions precedent to an obligation to perform are those acts or events that must occur after the making of a contract before there is a right to immediate performance and before there is a breach of contractual duties. *Hohenberg Bros. Co.*, 537 S.W.2d at 3.

Here, it is undisputed that Simpson's background check revealed a criminal history that, under district policy at the time, was considered unacceptable. Thus, the issue is whether the parties intended for a criminal background check, conducted with satisfactory results, to act as a condition precedent to the formation of their contractual relationship. *See Parkview Gen. Hosp.*, 447 S.W.2d at 491 ("When liability on the contract depends on the performance or a happening of a

9

condition precedent, the plaintiff must allege and prove that the condition has happened or has been performed or that there was a waiver of the performance of the condition precedent.").

Whether the parties intended to enter into a binding agreement is generally a question of fact. *Sadeghi v. Gang*, 270 S.W.3d 773, 776 (Tex. App.—Dallas 2008, no pet.). Likewise, whether the parties intended to create a contract only upon the satisfaction of a condition precedent is generally a question of fact. *Foreca, S.A. v. GRD Dev. Co.*, 758 S.W.2d 744, 746 (Tex. 1988). However, where the intent to form a binding agreement is clear on the face of an unambiguous writing, the issue may be determined as a matter of law. *Columbia Gas Transmission Corp. v. New Ulm Gas, Ltd.*, 940 S.W.2d 587, 589 (Tex. 1996); *John Wood Grp. USA, Inc. v. ICO*, 26 S.W.3d 12, 16 (Tex. App.—Houston [1st Dist.] 2000, pet. denied); *see Insurance Corp. of Am. v. Webster*, 906 S.W.2d 77, 80-81 (Tex. App.—Houston [1st Dist.] 1995, writ denied) ("The construction of an unambiguous writing is a question of law."). Whether a writing is ambiguous is also a question of law. *David J. Sacks, P.C. v. Haden*, 266 S.W.3d 447, 451 (Tex. 2008).

Here, the District argues that the Commissioner correctly determined that the Employee Contract and the Memorandum of Understanding created a condition precedent to the formation of an employment contract. Neither party argues that the Memorandum of Understanding or the Employee Contract is ambiguous. However, Simpson argues that the Memorandum of Understanding fails to create a condition precedent because the Memorandum of Understanding was not incorporated into the later-executed Employee Contract. We take Simpson's argument to mean that because the Memorandum of Understanding was not a part of the Employee Contract, any consideration of the Memorandum of Understanding in determining the intent of the parties is barred by the parol-evidence rule and the merger doctrine.

10

Under the parol-evidence rule, extrinsic evidence is inadmissible to add to, vary, or contradict the terms of an unambiguous written contract intended by the parties to be a final expression of their agreement. *See In re H.E. Butt Grocery Co.*, 17 S.W.3d 360, 369 (Tex. App.—Houston [14th Dist.] 2000, orig. proceeding) ("The parol evidence rule precludes consideration of extrinsic evidence to contradict, vary, or add to the terms of an unambiguous written agreement absent fraud, accident, or mistake."). Similarly, in contract cases, the "merger doctrine" acts as an analogue of the parol evidence rule. *Texas A & M Univ. v. Lawson*, 127 S.W.3d 866, 872 (Tex. App.—Austin 2004, pet. denied). Under the merger doctrine, prior or contemporaneous agreements between the same parties and concerning the same subject matter are absorbed, or "merged," into another subsequent contract. *Id*. When the parties have concluded a fully integrated written agreement, parol evidence of prior or contemporaneous agreements is inadmissible if it will vary or contradict the terms of the agreement, provided that the writing is unambiguous. *David J. Sacks, P.C.*, 266 S.W.3d at 450-51; *Carr v. Christie*, 970 S.W.2d 620, 622 n. 2 (Tex. App.—Austin 1998, pet. denied).

However, parol evidence is always admissible to show the nonexistence of a contract or the conditions upon which it may become effective. *Rincones v. Windberg*, 705 S.W.2d 846, 847 (Tex. App.—Austin 1986, no writ) (citing *Baker v. Baker*, 183 S.W.2d 724, 728 (1944)). "The effect of such a condition 'is not to vary the terms of a binding instrument but merely, as a condition precedent, to postpone the effective date of the instrument until the happening of a contingency. . . .'" *Id*. Consequently, a writing evidencing an intent to create a condition precedent to contract formation is admissible for this purpose, even when it is separate and apart from the written document for which enforcement is sought. *See id*. ("It is settled that parol evidence of a condition precedent

11

to a contract is admissible."). We will therefore consider the language of the Memorandum of Understanding.

Turning to the plain language of the Memorandum of Understanding, we examine whether it evidences the parties' intent to create a condition precedent to formation of a binding contract. In determining whether the District and Simpson unambiguously intended to create a condition precedent, we recognize that, because of their potential harshness, conditions precedent are disfavored. *Criswell v. European Crossroads Shopping Ctr., Ltd.*, 792 S.W.2d 945, 948 (Tex. 1990). "Although no particular words are necessary for the existence of a condition, such terms as 'if,' 'provided that,' 'on condition that,' or some other phrases that conditions performance, usually connote an intent for a condition rather than a promise." *Id*.; *Snyder v. Eanes Indep. Sch. Dist.*, 860 S.W.2d 692, 696 (Tex. App.—Austin 1993, writ denied).

While not singularly determinative, we note that the Memorandum of Understanding contains language that is generally indicative of intent to create a condition precedent. The Memorandum of Understanding, given to Simpson as a District "Employment Applicant" prior to his receiving a written offer of employment, states that "[the District] is offering you employment at this time *contingent* upon satisfactory results of the required local criminal background check." (Emphasis added). The document also states, "[Y]ou understand the *conditional* nature of your employment." (Emphasis added). Based on the plain language of the Memorandum of Understanding, we conclude that the document unambiguously evidences the parties' intent to create a condition precedent—that is, the District's obtaining of acceptable results from a criminal background check. This conclusion, however, does not end our inquiry. Instead, we must decide whether the condition

12

precedent in the Memorandum of Understanding creates a condition precedent to formation of a contract or to obligations to perform under an existing contract. *See Dillon*, 582 S.W.2d at 395 (explaining that condition precedent may be either condition to formation of contract or to obligation to perform existing agreement).

The District contends that the Memorandum of Understanding demonstrates that the parties intended for any offer of employment by the District to be contingent on the obtaining of a satisfactory criminal background check and thus creates a condition precedent to contract formation. However, nothing in the Memorandum of Understanding suggests that any *offer* of employment to Simpson is contingent. Instead, the Memorandum of Understanding states that "*employment* at this time" is contingent. (Emphasis added). In addition, the Memorandum of Understanding makes clear that termination of Simpson's employment could result if either (1) the criminal background check results are unacceptable or (2) Simpson fails to fully disclose all criminal history. Simpson contends, and we agree, that the Memorandum of Understanding provides that if a subsequent criminal background check proved unacceptable, one of two things would occur—(1) the District would not offer a formal employment contract, or (2) if a formal employment contract was offered and executed, as it was here, the unacceptable background check would then serve as basis for termination. In other words, under the Memorandum of Understanding, if the condition precedent of an acceptable background check is not satisfied, the District is relieved from its obligation to continue to pay and employ Simpson. Upon considering the language of the Memorandum of Understanding, viewed as a whole, we conclude that it clearly and unambiguously evidences the

13

parties' intent to create a condition precedent to the District's *obligations* under the contract, rather than to its formation.

In addition, the District argues that the Employee Contract itself demonstrates that the parties intended to create a condition precedent to formation of a contract. Specifically, the District points to conditional language in the Employee Contract:

> 5.     . . . This Contract is specifically subject to the policies, procedures, Standard Practice Memoranda (S.M.), rules, and regulations of the District as they exist or may be amended issued, enacted or adopted during the term of this Contract.
>
> 6.     This Contract is conditioned on the Employee providing the necessary certification, credentials, official transcripts, original service records, medical records, and/or other records and information required by law, . . . or the District.

Assuming that this language contemplates an acceptable criminal background check as a condition precedent, we again would conclude that, at the most, the Employee Contract evidences the parties' intent to establish a condition precedent to the District's continued obligations under the contract, not to the formation of the Employee Contract itself.

Whether the District may be excused from its obligations under the Employment Contract by virtue of an unfulfilled condition precedent has no bearing on whether a valid contract between the District and Simpson was formed—the sole jurisdictional fact at issue. *See* Restatement (Second) of Contracts § 225 (1981) (explaining effects of non-occurrence of condition). We conclude, as a matter of law, that the Memorandum of Understanding and the Employee Contract do not indicate that the parties intended to create a condition precedent to the formation of an

employment contract.[8] The District does not point to any other evidence in the administrative record as indicative of such intent; upon review of the record, we conclude that there is no such evidence. Accordingly, the Commissioner erred in dismissing Simpson's grievance for lack of jurisdiction on this basis. The District's first issue on appeal is overruled.

**Mutual Mistake**

In its second issue on appeal, the District argues that the trial court erred in reversing the Commissioner's jurisdictional determination because the record contains substantial evidence of mutual mistake of fact. A contract is voidable under the doctrine of mutual mistake if the parties formed the contract under a mutual misconception or mistake of a material fact. *Myra Props., Inc. v. La Salle Bank Nat'l Ass'n*, 300 S.W.3d 746, 751 (Tex. 2009). Because the issue is one of voidability, the contract continues to have legal effect and bind the parties until the mutual mistake is judicially established by one of the parties. Restatement (Second) of Contracts § 7 (1981) (explaining voidable contracts). In contrast, when a contract is void, no one is bound, and in effect, no contract has been formed. *See id*. § 7, cmt. a (explaining void contracts); *see also id.* § 163 (when misrepresentation prevents formation of a contract), § 174 (when duress by physical compulsion prevents formation of contract).

---

[8] Likewise, whether any condition precedent to the District's continued obligations under the Employee Contract has been waived has no bearing on whether a valid contract between Simpson and the District was formed. *See, e.g.*, *Sun Exploration Co. v. Benton*, 728 S.W.2d 35, 37 (Tex. 1987) (explaining that "a condition precedent may be waived" and that "the waiver of a condition precedent may be inferred from a party's conduct"). Accordingly, we need not decide the District's third issue on appeal—whether substantial evidence supports the Commissioner's determination that the criminal history requirement had not been waived.

Even if the Commissioner correctly determined that the Employee Contract is voidable for mutual mistake, we could not conclude on this basis that the parties failed to form a contract. Whether the parties formed a contract is the only jurisdictional issue before us; therefore, we need not decide whether there is substantial evidence to support the Commissioner's conclusion that the Employee Contract was the result of mutual mistake. We conclude that, even if there is substantial evidence to support mutual mistake in this case, the Commissioner erred in dismissing for lack of jurisdiction on this basis. We overrule the District's second issue on appeal.

## CONCLUSION

Because the Commissioner's finding that no valid contract was formed between Simpson and the District is not supported by substantial evidence, we conclude that the Commissioner erred in determining that he lacked jurisdiction over Simpson's grievance. We affirm the judgment of the trial court.

 

_____

Scott K. Field, Justice

Before Justices Puryear, Pemberton and Field

Affirmed

Filed: November 1, 2013

16